IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>vs.<br><br>KELVIN WAYNE SIMMONS, | DOCKET NO. 1:25 CR 71<br><br>**MOTION FOR AN INFORMATIONAL OUTLINE OF CERTAIN AGGRAVATING FACTORS** |

## I. INTRODUCTION

Defendant Kelvin Wayne Simmons, through undersigned counsel, and pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution and the Federal Death Penalty Act, respectfully moves the Court to direct the government to provide an informational outline of the theories and essential facts underlying certain of the statutory and non-statutory aggravating factors that it intends to prove at a capital-sentencing phase to support a sentence of death.

At a capital-sentencing phase, the aggravating factors identified in the government's notice will function much as the elements of an offense do at a trial on guilt, because the government must prove each factor beyond a reasonable doubt and the jury may weigh only those factors it unanimously finds established. The factors this motion addresses, however, are pleaded in the broadest and most general terms. For each of them, the indictment and the Notice of Intent to Seek the

Death Penalty supply only the statutory or boilerplate language of the factor, without any statement of the acts, events, or evidence on which the government intends to rely. That absence leaves Mr. Simmons unable to prepare to meet those factors, and it leaves the Court without the information it needs to screen the aggravating factors and the evidence offered in support of them before that evidence reaches the jury.

As courts that have considered the question have generally recognized, the appropriate means of avoiding those difficulties is an informational outline of the essential facts underlying the challenged factors. Thus, requests of this kind are common in federal capital litigation. Death notices that state their aggravating factors in general terms have repeatedly led district courts, including courts within the Fourth Circuit, to direct the government to provide an informational outline of the theories and facts underlying those factors. *See, e.g., United States v. Lecco*, 2007 WL 486614 (S.D. W. Va. Feb. 9, 2007); *United States v. Johnson*, 136 F. Supp. 2d 553, 562 (W.D. Va. 2001). What Mr. Simmons seeks is therefore routine, not an extraordinary demand on the government.

Finally, the relief Mr. Simmons seeks is limited. He does not request an outline of every factor in the Notice, and he does not request disclosure of every item of evidence the government may offer. He requests only a sufficiently in-depth summary, factor by factor, of the theories and the essential facts the government intends to prove, sufficient to permit the preparation of a defense and the framing of

the pretrial challenges to the aggravating factors that the schedule in this case will require.

## II. FACTUAL BACKGROUND

Kelvin Wayne Simmons is charged by indictment with first-degree felony murder of an officer or employee of the United States, in violation of 18 U.S.C. §§ 1111 and 1114 (Count 1), and attempted carjacking resulting in death, in violation of 18 U.S.C. § 2119 (Count 2). *See* ECF 1. On March 17, 2026, the government filed its Notice of Intent to Seek the Death Penalty as to both counts. ECF 20. Because Mr. Simmons is charged with two offenses punishable by death, the Act required the government to file that notice a reasonable time before trial, to set forth in it the aggravating factors it proposes to prove in support of a sentence of death, and to obtain leave on a showing of good cause before amending it. 18 U.S.C. § 3593(a). The statutory aggravating factors and the gateway intent factors determine Mr. Simmons's eligibility for a sentence of death, and they operate at the sentencing phase as the functional equivalent of the elements of a greater offense that the jury must find beyond a reasonable doubt. *See Ring v. Arizona*, 536 U.S. 584, 597, 609 (2002). Because they perform that eligibility function, those factors carry the notice guarantees that attach to the elements of an offense under the Fifth and Sixth Amendments.

The Notice alleges the gateway intent factors under 18 U.S.C. § 3591(a)(2), three statutory aggravating factors under § 3592(c), and five non-statutory

aggravating factors.[1] ECF 20 at 2-4. The three statutory factors are death during the commission of another crime, § 3592(c)(1); previous conviction of a violent felony involving a firearm, § 3592(c)(2); and grave risk of death to additional persons, § 3592(c)(5). The five non-statutory factors are that the victim was a law enforcement officer; victim impact; future dangerousness, which itself rests on four enumerated bases; intent to commit additional murders; and uncharged acts of violence and contemporaneous convictions.

For certain of these factors the Notice gives adequate notice. The factor alleging previous conviction of a violent felony involving a firearm identifies the specific prior convictions on which the government relies, naming five convictions entered in Cabarrus County Superior Court in 2005 and the offenses and victims involved. ECF 20 at 3-4. Mr. Simmons does not seek an outline of that factor. For most of the remaining factors, however, the Notice recites only vague, conclusory,

---

[1] To be eligible for a sentence of death, a defendant must be convicted of an offense punishable by death, and the jury must find that he was at least eighteen at the time of the offense and that at least one gateway intent factor, 18 U.S.C. § 3591(a)(2), is established. The jury must also find at least one statutory aggravating factor from among those enumerated in 18 U.S.C. § 3592(c). A statutory aggravating factor, once found, is also weighed by the jury in reaching its sentencing decision. 18 U.S.C. § 3593(e); *see United States v. McCullah*, 76 F.3d 1087, 1108 (10th Cir. 1996). The non-statutory aggravating factors are the additional factors the FDPA permits the government to allege and the jury to weigh, if found unanimously and beyond a reasonable doubt. 18 U.S.C. § 3593(d); *see United States v. Robinson*, 367 F.3d 278, 293 (5th Cir. 2004). They do not bear on eligibility but instead guide the jury's selection between a sentence of death and a sentence of life imprisonment, and the government may present a non-statutory factor only if it is relevant and reliable, is not overbroad or vague, and is a proper aggravating factor in the first place. *See United States v. Davis*, 912 F. Supp. 938, 941 (E.D. La. 1996); *United States v. Hammer*, 2014 WL 2465276, at *9 (E.D. Pa. May 29, 2014).

and highly generalized language, and leaves the supporting acts, events, and evidence unstated. As such, they do not supply any information that will enable the Court to perform its gatekeeping function or allow the preparation of a defense. *See United States v. Hall*, 945 F.3d 1035, 1042-46 (8th Cir. 2019) (noting that under the FDPA a district court "has more gatekeeping power…even though a greater range of evidence can potentially pass through the door"); *United States v. Con-Ui*, 2016 WL 9331115, at *17 (M.D. Pa. Jan. 28, 2016) (Court orders the government to provide an informational outline "pursuant to [its] responsibility to screen the evidence to be offered," stating that such an outline will "allow the defendant to adequately prepare for the sentencing proceeding" and "ensure the evidence presented at trial complies with the mandates of 18 U.S.C. § 3593(c) and the Constitution.") (internal citations omitted). Specifically, the factor alleging a grave risk of death to additional persons names neither the persons endangered nor the acts that endangered them. The victim impact factor names no affected person, no personal characteristic and no particular harm. The future dangerousness factor alleges conduct occurring "on multiple prior occasions" and a "continuing pattern" of violence without identifying a single incident. And the factor alleging uncharged acts of violence and contemporaneous convictions describes only "multiple other serious acts of violence" without identifying any of them. ECF 20 at 4-7. Without additional information about these factors, the Court is unable to adequately perform its gatekeeping duties, and Mr. Simmons is unable prepare his defense.

## III. ARGUMENT

### A. Mr. Simmons is entitled to meaningful advance notice of the theories and facts the government intends to prove to establish its aggravating factors.

The sentencing phase of a capital prosecution resembles a trial on guilt in the respects that matter here. The aggravating factors are the functional equivalent of elements: the government must prove each beyond a reasonable doubt, the jurors may not consider a factor unless they unanimously find it established, and their verdict on punishment turns on their findings as to those factors together with the mitigating factors that the defense may prove. *See* 18 U.S.C. § 3593(c)-(e); *United States v. Fell*, 360 F.3d 135, 142 (2d Cir. 2004). Because the aggravating factors perform that function, and because Mr. Simmons cannot prepare to meet and rebut them without knowing the theories and facts on which they rest, he is entitled to notice of what the government intends to prove in support of them. Requiring the government to summarize the theories and facts behind those factors serves two ends. It gives Mr. Simmons a fair opportunity to investigate, object to, and rebut the government's penalty-phase evidence and to raise any legal and evidentiary challenges to it, and it allows the Court to perform its own duty of ensuring that the evidence the government offers is relevant, reliable, and otherwise admissible under 18 U.S.C. § 3593(c) before the jury hears it.

The FDPA permits the jury to consider only those aggravating factors for which notice has been given. 18 U.S.C. § 3592(c); *see id.* § 3593(a). Notice that does no more than recite the statutory or boilerplate language of a factor raises the

specter of unfair surprise and prejudices the defendant's ability to defend against the government's effort to obtain a sentence of death. *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1057-58 (D.N.D. 2005). The ability to defend against the case the prosecutor presents, which at a capital-sentencing phase includes the case for a particular punishment, is among the hallmarks of due process, and a defendant may not "be sentenced to death on the basis of information which he had no opportunity to refute." *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 471 (E.D. Pa. 2001) (quoting *Simmons v. South Carolina*, 512 U.S. 154, 175 (1994) (O'Connor, J., concurring)). Due process therefore requires, at a minimum, that the defendant receive notice of the aggravating factors sufficient to enable him to respond and to prepare his case in rebuttal, *United States v. Wilson*, 493 F. Supp. 2d 364, 377 (E.D.N.Y. 2006); U*nited States v. Kaczynski*, 1997 WL 34626785, at *18 (E.D. Cal. Nov. 7, 1997), which the FDPA reinforces by entitling the defendant to rebut the information the government presents, 18 U.S.C. § 3593(c); *see Skipper v. South Carolina*, 476 U.S. 1, 8-9 (1986) (holding that a capital defendant could not be barred from presenting evidence to rebut the prosecution's case that he posed a future danger). This Court has embraced that principle in this case. In its order addressing scheduling in this case, the Court recognized that this fair right of rebuttal "would be meaningless if information is not provided sufficiently early to rebut." ECF 67 at 7-8 (quoting *United States v. Tsarnaev*, 2014 WL 4823882, at *5 (D. Mass. 2014)). The Court further observed that disclosing information in advance allows it to adjudicate any challenges to the aggravating factors before trial, so that

the parties may adjust their strategy in light of its rulings. ECF 67 at 8. To meet that requirement, and to satisfy the heightened reliability the Eighth Amendment demands in capital sentencing, the government must inform the defendant of the theories and facts it will use to establish each aggravating factor. *Llera Plaza*, 179 F. Supp. 2d at 472.

An informational outline meets this notice requirement. Mr. Simmons does not seek the government's evidence or its theory of the case, but only a summary, factor by factor, of the theories and the essential facts on which the government intends to rely, enough to allow the defense to prepare. The government cannot withhold that summary on the theory that Mr. Simmons already knows the conduct at issue, because the presumption of innocence forecloses treating a defendant as though he were aware of the factual basis for allegations he has not admitted. *See United States v. McQuarrie*, 2018 U.S. Dist. LEXIS 5065, at *15-16 (E.D. Mich. Jan. 11, 2018); *United States v. Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985).

An outline also enables the Court to perform its gatekeeping function. Under the FDPA, the ordinary rules of evidence do not govern a capital-sentencing hearing, and information is admissible unless its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. 18 U.S.C. § 3593(c). The universe of information the government might attempt to use is therefore vast, and the facts it might attempt to prove are many. *United States v. Gendron*, 2024 WL 3647779, at *1 (W.D.N.Y. Aug. 2, 2024). The Court's screening of the aggravating factors is essential to channeling, directing, and limiting the jury's

discretion so as to prevent the arbitrary and capricious imposition of the death penalty, *United States v. Cisneros*, 363 F. Supp. 2d 827, 833 (E.D. Va. 2005), and the Court cannot perform that screening, or rule on the challenges the defense will raise, without knowing the theories and facts the government intends to offer. *See United States v. Hammer*, 2011 WL 6020157, at *3 (M.D. Pa. Dec. 1, 2011); *United States v. Karake*, 370 F. Supp. 2d 275, 280-81 (D.D.C. 2005). District courts regularly exercise that screening function before trial, striking aggravating factors or excluding the evidence offered to support them when the government's showing falls short. *See, e.g., United States v. Smith*, 630 F. Supp. 2d 713, 716-18 (E.D. La. 2007) (striking prior-firearm-conviction aggravator where the predicate robbery plea did not establish firearm use and the government could not supply it through collateral evidence); *United States v. Catalan Roman*, 371 F. Supp. 2d 36, 46-47 (D.P.R. 2005) (striking substantial-planning aggravator where the planning shown related to the robbery rather than the murder); *United States v. Lujan*, 2011 WL 13210673, at *8-9 (D.N.M. Mar. 10, 2011) (excluding incidents of prior misconduct offered to prove future dangerousness as remote, dissimilar, and more prejudicial than probative). Without an outline, that screening could occur only as the evidence is offered, with the Court ruling on the admissibility of penalty-phase testimony and exhibits while witnesses are on the stand, which is an impractical way to conduct the inquiry and risks exposing the jury to unreliable or inadmissible information before the Court can address it.

The government's production of discovery, however extensive, does not supply the notice that an outline provides. The disclosure of documents that contain the underlying facts does not tell the defense which acts and events the government intends to prove at sentencing, and the volume of discovery in a case of this kind tends to make that determination more difficult rather than less. Even comprehensive discovery about aggravating factors cannot substitute for such notice of the government's anticipated presentation:

> [T]he fact that the precise acts and/or events may have been disclosed in the course of discovery does not obviate the need for a more specific notice. Even if the government has provided Defendant with documents detailing specific acts, the government has not yet indicated which acts and/or events it intends to use at sentencing. In fact, the characterization of the discovery provided as extensive lends further support for requiring the government to identify the particular acts upon which it will rely. Extensive discovery could make it difficult for Defendant to ascertain which precise discovery will be used against him.

*Rodriguez*, 380 F. Supp. 2d at 1057-58 (quoting *Kaczynski*, 1997 WL 34626785, at *19). As one court put the point, notice means notice, and it does not mean a scavenger hunt for clues in discovery. *United States v. Diaz*, 2007 WL 4169973, at *5 (N.D. Cal. Nov. 20, 2007); *see United States v. Gooch*, 2006 WL 3780781, at *23 (D.D.C. Dec. 20, 2006).

The Court has the inherent authority to require the outline requested here. Because the FDPA is silent as to the procedures governing disclosure of penalty-phase evidence, that silence leaves the fashioning of such procedures, including as to disclosure, to the courts. *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1269-

70 (D.N.M. 2008) ("courts generally used their inherent powers to order the government to provide additional information on certain aggravating factors in order to ensure a meaningful opportunity to prepare a defense"; collecting cases illustrating courts' reliance on their inherent authority to order the government to produce an informational outline); *United States v. Catalan Roman*, 376 F. Supp. 2d 108, 112 (D.P.R. 2005); *United States v. Beckford*, 962 F. Supp. 748, 757 (E.D. Va. 1997). Accordingly, courts have relied on their inherent authority to order the government to provide additional information about the aggravating factors in a capital case, both to protect the defendant's right to notice and to facilitate the court's gatekeeping function. *See Rodriguez*, 380 F. Supp. 2d at 1058.

### B. Consistent with the weight of authority, the government should be directed to provide an informational outline.

Applying these principles, the courts that have addressed the question have generally directed the government to provide an informational outline of the theories and essential facts underlying at least the broader aggravating factors in a capital notice. *See Gendron*, 2024 WL 3647779; *United States v. Tsethlikai*, 2026 WL 788652, at *3 (D.N.M. Mar. 20, 2026); *United States v. Diaz-Bautista*, 2026 WL 2069982 (D.V.I. July 17, 2026) (order granting motion for informational outline); *Llera Plaza*, 179 F. Supp. 2d at 473-75; *Lujan*, 530 F. Supp. 2d at 1269-72; *Karake*, 370 F. Supp. 2d at 279-81; *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304-05 (S.D.N.Y. 2001); *Hammer*, 2011 WL 6020157, at *3; *Wilson*, 493 F. Supp. 2d at 378; *United States v. Con-Ui*, 2016 WL 9331115, at *17-19 (M.D. Pa. Jan. 28, 2016); *United States v. Schlesinger*, 2021 WL 5578901, at *3-4 (D. Ariz. Nov. 30, 2021);

*United States v. Glover*, 43 F. Supp. 2d 1217, 1224-28 (D. Kan. 1999) (declined to follow on other grounds by United States v. George, 477 F.Supp.3d 532 (E.D. La. 2020); *United States v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000); *Gooch*, 2006 WL 3780781, at *23 (declined to follow on other grounds by United States v. Ciancia, 2015 WL 13798677 (C.D. Cal. Sep. 8, 2015); *Kaczynski*, 1997 WL 34626785, at *19.

District courts within the Fourth Circuit have directed the government to provide this kind of specificity. In *United States v. Lecco*, the court ordered the government to submit an outline to the defendants and the court summarizing the information it intended to use to establish the aggravating factors set forth in its death notices, describing the required disclosure as a document "akin to an informative outline, but not a revelation of evidentiary detail or the Government's theory of its case." 2007 WL 486614, at *5 (S.D.W. Va. Feb. 9, 2007) (quoting *Bin Laden*, 126 F. Supp. 2d at 304-05). The court granted that relief as a discretionary middle ground between the bare notice the government had provided and the evidentiary detail a bill of particulars would supply, and it did so without ordering amendment of the notices or granting a bill of particulars. *Id.*[2] And in *United States*

---

[2] The government may point to *United States v. Umana*, 2009 WL 10681708 (W.D.N.C. May 13, 2009), aff'd, 2010 WL 1049425 (W.D.N.C. Mar. 18, 2010), in which a magistrate judge in this district denied a capital defendant's request for particulars as to several non-statutory aggravating factors. Umana does not bear on the relief sought here. The defendant there moved under Federal Rule of Criminal Procedure 7(f) for a bill of particulars, and the court denied the motion largely because Rule 7(f) does not apply to a death notice and does not entitle a defendant to the government's evidence. 2009 WL 10681708, at *2-3. The court did not address, much less reject, a court's authority to order the discretionary

*v. Johnson*, the court found the government's non-statutory aggravating factors, among them victim impact and future dangerousness, too vague to guide the sentencer or to permit judicial and appellate review, and it directed the government to amend its notice and to restate those factors in, as the defendant put it, "short declarative sentences." 136 F. Supp. 2d 553, 561 (W.D. Va. 2001).

**C. The government's allegations for the following factors require an informational outline.**

*1. Grave Risk of Death to Additional Persons*

The Notice alleges that Mr. Simmons, "in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense." ECF 20 at 4. But the Notice does not identify the persons to whom the government alleges Mr. Simmons created a grave risk of death, and it does not identify the acts said to have created that risk. That omission carries particular weight here because the Notice elsewhere alleges that Mr. Simmons engaged in high-speed vehicular flight from law enforcement, conduct that could implicate an indeterminate number of

---

informational outline that *Lecco* described, which is not a bill of particulars and does not depend on Rule 7(f). *See Lecco*, 2007 WL 486614, at *5. The district judge, moreover, affirmed on the ground that the defendant's objection was untimely and therefore waived, and reached the merits only in the alternative and on clear-error review. 2010 WL 1049425, at *2. That alternative discussion turned on the particularity the notice in that case supplied: the court found the notice sufficient because the government had already identified two specific uncharged murders, by date, place, and victim, as the acts it would principally rely upon. *Id.* The Notice here supplies no comparable particulars for any of the factors at issue, so *Umana*, on its own reasoning, supports rather than forecloses the relief Mr. Simmons requests.

officers, other motorists, and bystanders. The question at sentencing is not merely whether the factor exists, but how broadly it reaches, what facts it embraces, and what weight it carries. *Gendron*, 2024 WL 3647779, at *4. The government should be directed to provide an outline that identifies, both during the commission of the offense and during any escape and flight, the persons to whom it alleges Mr. Simmons knowingly created a grave risk of death and the acts by which it alleges he did so. *See id.; Llera Plaza*, 179 F. Supp. 2d at 473.

*2. Victim Impact*

The Notice alleges that Mr. Simmons "caused injury, harm, and loss to the family, friends, and co-workers of the victim," and that the injury, harm, and loss "is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his family, friends, and co-workers." ECF 20 at 5. This is materially the boilerplate on which courts ordered outlines in *Gendron* and *Diaz-Bautista*. It identifies no personal characteristic the government intends to prove, names no family member, friend, or co-worker whose testimony it intends to offer, and describes no particular injury, harm, or loss.

As other district courts have recognized: "That the range of human suffering—whether physical, emotional, or economic—is vast goes without saying." *Bin Laden*, 126 F. Supp. 2d at 304; *see Wilson*, 493 F. Supp. 2d at 378 ("The category of 'victim impact' is vast."); *United States v. Green*, 2008 WL 4000870, at *21 (W.D. Ky. Aug. 26, 2008) (same). Thus, an "oblique reference to victims' 'injury, harm, and loss,' without more, does nothing to guide [the defendant's] vital task of

preparing for the penalty phase of trial." *Bin Laden*, 126 F. Supp. 2d at 304. It also hamstrings this Court's performance of its gatekeeping role in this especially fraught and sensitive area of the case. As one district judge observed: "This is the most problematical of all of the aggravating factors and may present the greatest difficulty in determining the nature and scope of the 'information' to be considered." *United States v. McVeigh*, 944 F. Supp. 1478, 1491 (D. Colo. 1996).[3]

The government's notice of this factor is unbounded. It alleges only "injury, harm, and loss," and it identifies no personal characteristic, no witness, and no particular harm, even though the forms victim impact evidence can take are many. A notice pitched at that level of generality does not tell the defense which of those forms the government will offer, and it leaves the Court unable to screen the evidence for reliability and undue prejudice under § 3593(c) until it learns what the government intends to present. Those determinations have to be made before the jury hears the testimony, not while a witness is on the stand, because the prejudice from improper victim impact evidence reaches the jury as the testimony is given and cannot be undone once heard. *See United States v. O'Driscoll*, 203 F. Supp. 2d 334, 340 (M.D. Pa. 2002) (victim impact evidence is problematic because of the

---

[3] Another judge has recognized that victim impact testimony has "unsurpassed emotional power . . . on a jury." *United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa 2005). The federal judge in that case described it as "the most forceful, emotionally powerful, and emotionally draining evidence that [he has] heard in any kind of proceeding in any case, civil or criminal, in [his] entire career as a practicing trial attorney and federal judge spanning nearly 30 years." *Id.*

potential for emotional outbursts during the testimony); *United States v. Johnson*, 713 F. Supp. 2d 595, 625 (E.D. La. 2010) (during a sidebar on a defense objection, the victim's overwrought wife remained on the stand and "continue[d] to cry … within feet" of the jurors, leaving them "totally vested in her plight" and "feel[ing] her misery unattended by counsel and the Court").

Thus, faced with similarly conclusory notices for victim impact, courts in other cases have ordered the government to "more specifically articulate the nature of this aggravator." *Glove*r, 43 F. Supp. 2d at 1225. One court directed the government to specify "which members of the [victim's] family have suffered, the nature of their suffering, and the nature of the 'permanent harm,'" for example, "whether members of the family sought counseling

or other medical treatment, such as hospitalization." *Id.* Other courts have entered similar orders. *See, e.g., Gendron,* 2024 WL 3647779, at *4 (ordering government to "provide an outline with the personal characteristics it intends to prove as to each victim; the identities of the people whom it intends to prove were affected; and the type and scope of the loss, injury, and harm suffered" because an "outline is necessary to give Gendron notice of the extent and scope of the injuries and loss that the government alleges"); *United States v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) ("[T]he government shall amend its notice of intent . . . to include more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to

prove."); *United States v. Burkhalter*, 2021 WL 3519281, at *9 (W.D. Mo. Aug. 10, 2021) (same); *United States v. Pleau*, 2013 WL 1673109, at *4 (D.R.I. Apr. 17, 2013) (same); *United States v. Talik*, 2007 WL 4570704, at *9 (N.D.W. Va. Dec. 26, 2007) (same); *Llera Plaza*, 179 F. Supp. 2d at 474-75 (same); *United States v. Duncan*, 2008 WL 656036, at *8 (D. Idaho Mar. 6, 2008) (same); *Green*, 2008 WL 4000870, at *20-21 (same); *United States v. O'Reilly*, 2007 WL 4591856, at *5 (E.D. Mich. Dec. 28, 2007) (same); *United States v. Williams*, 2013 WL 1335599, at *40 (M.D. Pa. Mar. 29, 2013) (same).

This Court, like others, should therefore "order the Government to outline the type and scope of the 'loss, injury, and harm' suffered by each victim, his or her family members, and other individuals as relevant, and the 'personal characteristics' of each victim that it intends to prove." *Gooch*, 2006 WL 3780781, at *23; *see, e.g., Schlesinger*, 2021 WL 5578901, at *3 (requiring government to provide "a list of the personal characteristics of the victims that the Government intends to prove" and "particularized categories of injury, harm, and loss"); *Con-Ui*, 2016 WL 9331115, at *19 (ordering informational outline on victim-impact aggravator specifying list of personal characteristics of victim, whether any testimony will be introduced from persons not named in the NOI, particularized categories of harm and loss that government intends to present, and any other pertinent information defendant would need to adequately prepare to respond.); *United States v. Savage*, 2013 WL 1934531, at *19 (E.D. Pa. May 10, 2013) (ordering government to provide either actual "victim impact statements" or "an outline of the specific evidence

about which [each] victim will testify."); *Pleau*, 2013 WL 1673109, at **4, 6 ("the Court hereby orders the government to provide an outline of its victim impact evidence").

*3. Future Dangerousness*

The Notice alleges that Mr. Simmons "poses a continuing danger to the lives and safety of other persons" and "is likely to commit criminal acts of violence in the future," as evidenced by "at least, one or more of" four categories of conduct: multiple prior escapes and escape attempts; multiple prior incidents of dangerous, high-speed vehicular flight from law enforcement; a continuing pattern of violence, attempted violence, and threatened violence; and low rehabilitative potential. ECF 20 at 5-6. The Notice does not even confine the factor to those four categories. It alleges that the government will prove future dangerousness by "at least" one or more of them, which leaves the government free to rely on conduct the Notice does not identify at all. Future dangerousness is among the factors most often found to require an outline, because it invites the government to prove a wide range of conduct across the course of the defendant's life. *See Schlesinger*, 2021 WL 5578901, at *3-4; *Lujan*, 530 F. Supp. 2d at 1271; *United States v. Shakir*, 2008 WL 11504614, at *11 (M.D. Tenn. Apr. 22, 2008) (requiring the government to specify the acts of violence the jury would be asked to consider under a future-dangerousness factor). Here, the notice identifies no particular incident within any of the four categories. The first two are alleged to have occurred "on multiple prior occasions" without stating which occasions, or when or where they took place; the

third identifies no act at all; and the fourth rests on unspecified criminal activity and unspecified conduct and statements said to have occurred during incarceration. The government should be directed to identify, for each of the four bases, the specific incidents on which it intends to rely, including the date and location of each, the specific acts of violence, attempted violence, and threatened violence encompassed by the third basis, and the specific instances of institutional misconduct and the statements encompassed by the fourth.

*4. Uncharged Acts of Violence and Contemporaneous Convictions*

The Notice alleges that Mr. Simmons "committed multiple other serious acts of violence, attempted violence, and threatened violence, both for which he faces contemporaneous convictions and for which he has not been charged, during his escape and subsequent flight from law enforcement." ECF 20 at 7. But the Notice does not identify any of the acts on which the factor rests, and the government may not excuse that absence on the ground that Mr. Simmons is aware of his own conduct, because he is presumed innocent of conduct he has not admitted. *See McQuarrie*, 2018 U.S. Dist. LEXIS 5065, at *15-16. The government should be directed to provide a comprehensive list of each act of violence, attempted violence, and threatened violence it intends to prove under this factor, including the date and location of each, the nature of Mr. Simmons's alleged participation, and the evidence by which it intends to prove each act. *See Diaz-Bautista*, 2026 WL 2069982, at *4-6 (order); *Lujan*, 530 F. Supp. 2d at 1271; *United States v. Sanders*, 2014 WL 2612502, at *1 (W.D. La. June 9, 2014) (requiring the government to

disclose in detail the acts of violence and other misconduct it anticipated presenting at sentencing).

### *5. Intent to Commit Additional Murders*

The Notice alleges that, "[h]ad the Defendant escaped from his pursuers on or about June 30, 2025, he intended to rob another bank, then murder another man and the man's parents." ECF 20 at 6. Beyond identifying a date and a general course of intended conduct, the government does not identify the man or the parents whom Mr. Simmons is alleged to have intended to murder, and it does not disclose the basis on which the government intends to prove that intent. The government should be directed to identify the persons referred to in this factor and the evidence by which it intends to prove the alleged intent.

## IV. CONCLUSION

For these reasons, Mr. Simmons respectfully requests that the Court direct the government to provide an informational outline of the theories and essential facts underlying the aggravating factors of grave risk of death to additional persons, victim impact, future dangerousness, uncharged acts of violence and contemporaneous convictions, and intent to commit additional murders, in the respects described above, and permitting supplementation only on a showing of good cause and adequate notice.

Respectfully submitted,

*/s/ John G. Baker*
John G. Baker
Federal Public Defender
Federal Public Defender's Office
129 West Trade St., Ste. 300
Charlotte, NC 28202
Phone: (704) 374-0720
Fax: (704) 374-0722
Email: john_baker@fd.org

*/s/ Daniel P. Roberts*
Daniel P. Roberts
Assistant Federal Public Defender
Federal Public Defender's Office
129 West Trade St., Ste. 300
Charlotte, NC 28202
Phone: (704) 374-0720
Fax: (704) 374-0722
Email: daniel_p_roberts@fd.org

*/s/ Robert A. Singagliese*
Robert A. Singagliese
Assistant Federal Public Defender
Capital Resource Counsel Project
Middle District of Tennessee
123 W. Main St., Ste. M-08
Durham, NC 27701
Phone: (615) 986-2022
Email: robert_singagliese@fd.org