UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. |
| | ) | 1:25CR71-MR-WCM |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| KELVIN WAYNE SIMMONS, | ) | |
| Defendant. | ) | |
| | ) | |

**<u>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN INFORMATIONAL OUTLINE</u>**

Simmons asks this Court to order the Government to provide him with a written preview summary of its legal theories and evidence that it intends to produce at the sentencing phase at trial. [Def. Mot., Doc. #71, p. 2]. He claims that he is "unable to prepare" for trial without it. *Id.*

As set forth below, Simmons is not legally entitled to the informational outline he requests. Further, through the indictment [Doc. #1], Notice of Intent to Seek the Death Penalty ("NOI") [Doc. #20], and discovery (and this response), the Government has provided adequate notice of all aggravating factors it will present at trial. Accordingly, this Court should deny Simmons' motion.

## Relevant Facts and Procedural History

On June 30, 2025, Detention Officers Francisco Flattes and George Feinauer transported the Defendant, Kelvin Dewayne Simmons (who was in the custody of the United States Marshals Service while awaiting this Court's judgment in another case), from the Cherokee County Detention Facility to an off-site medical office for treatment. There Simmons escaped federal custody by physically assaulting and overpowering Officer Feinauer and stealing his service weapon. Officer Flattes intervened and attempted to wrestle the firearm from Simmons, but Feinauer's gun discharged during the struggle, shooting Flattes in the center chest and killing him.

Simmons then continued his escape while armed with Feinauer's weapon. After first attempting to steal the patrol vehicle he arrived in and then attempting to carjack a female patient, he successfully carjacked another woman at gunpoint and led police on a high-speed, dangerous vehicle chase. Pursuing officers eventually stopped Simmons' flight with a spike strip and by ramming his stolen car several times. Simmons eventually surrendered after an approximately 20-minute stand-off. He was returned to federal custody after providing a full

confession to agents from the North Carolina State Bureau of Investigation.

A federal grand jury indicted Simmons for his new crimes on October 7, 2025. [Doc. #1]. The indictment identified the death-eligible counts and described both the eligibility factors and three statutory aggravating factors as required by 18 U.S.C. § 3591. [*Id.* at 8–12]. On March 17, 2026, the Government filed its NOI that restated the eligibility factors and the three statutory aggravating factors. [Doc. #20]. Additionally, the NOI identified five non-statutory aggravating factors upon which the Government would rely to seek a death sentence. [*Id.* at 4–7].

The Government began providing discovery to the Federal Defender's Office (which represented Simmons on the earlier federal charges and expanded its representation to include his new charges almost immediately after the escape and murder) well before obtaining an indictment. To date, the Government has produced over 13,000 pages of discovery and many more photographs and video and audio recordings. This expansive discovery production well exceeds the Government's obligations under Federal Rule of Criminal Procedure 16, the Jencks Act,

*Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

On August 28, 2026, Simmons filed his Motion for an Informational Outline of Certain Aggravating Factors. For the reasons stated below, the Court should deny his motion in its entirety.

## **Argument**

A. The Court Should Deny the Defendant's Motion Because the Defendant is Not Entitled to an Informational Outline

Simmons seeks an order requiring the Government to produce an outline of its "theories and the facts on which they rest" because, he claims, he is unable to prepare for trial without it. [Def. Mot., Doc. #71, pp. 6–7]. The law, however, does not require the Government to identify before trial the evidence it will present in aggravation. Neither the plain language of the Federal Death Penalty Act (the "FDPA"), 18 U.S.C. §§ 3591–98, nor the Constitution support Simmons' request. For this reason, the case law, including reasoned opinions of multiple Courts of Appeals and numerous district courts, undermines Simmons' request.

The FDPA requires the government, at "a reasonable time before trial," to provide "a notice stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted,

a sentence of death is justified . . . and the government will seek the sentence of death." 18 U.S.C. § 3593(a)(1). Additionally, the statute requires the notice to "set[] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593(a)(2). The statute, however, does not require the government to reveal its evidence in support of these factors. *See*, *e.g.*, *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003) ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it."); *United States v. Taylor*, 316 F. Supp. 2d 730, 741 (N.D. Ind. 2004) ("[The] Notice of Intent informs the Defendant that the Government intends to seek the death penalty and lists the aggravating factors that the Government will seek to prove. The statute requires no more.").

The FDPA notice provisions comply with constitutional standards. The defendant is entitled to notice of the charges against him, *Stirone v. United States*, 361 U.S. 212, 217 (1960), but there is no extant constitutional right to advance notice of the evidence that the government intends to use to prove such charges, even in a capital

sentencing hearing. *See Gray v. Netherland*, 518 U.S. 152, 166–70 (1996). In *Gray*, the petitioner claimed he was deprived of adequate notice because he did not know about some of the witnesses who would testify against him until the evening before his capital sentencing hearing. *Id.* at 167. In rejecting the petitioner's claim, the Supreme Court summarized the existing precedent regarding a defendant's right to notice, concluding that, "[t]o put it mildly, these cases do not compel a court to order the prosecutor to disclose his evidence; their import, in fact is strongly against the validity of petitioner's claim." *Id*. at 168; *see also Wardius v. Oregon*, 412 U.S. 470, 474 (1973) ("[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded.").

Applying these standards, every United States Court of Appeals addressing this issue has held that identification of the aggravating factors, as outlined by the government in a notice of intent to seek the death penalty, is the only notice to which a defendant is entitled. *See, e.g.*, *Higgs*, 353 F.3d at 325; *United States v. LeCroy*, 441 F.3d 914, 929–30 (11th Cir. 2006); *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001); *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999).

In *Higgs*, the defendant and an accomplice kidnapped three women and killed them in a national park outside of Washington, D.C. *See* 353 F.3d at 290. While Higgs's federal murder case was pending, he was also charged in the District of Columbia Superior Court in connection with a nightclub shooting. *Id.* At Higgs's murder trial, federal prosecutors presented evidence of Higgs's intimidation of a witness to the D.C. shooting to support a non-statutory aggravating factor of obstruction of justice. *Id.* at 325. Higgs argued on appeal that the district court abused its discretion in admitting the testimony because he did not receive pretrial notice that the government intended to introduce evidence concerning the witness or the nightclub shooting. *Id.* The Fourth Circuit held that Higgs's claim was "plainly without merit," explaining that the "FDPA and Constitution require that the defendant receive adequate notice of the aggravating factor, which Higgs admittedly received in this case, not notice of the specific evidence that will be used to support it." *Id.*

In *LeCroy*, the government alleged future dangerousness as an aggravating factor and listed in its notice of intent to seek the death penalty multiple categories of evidence that would support its

aggravating factor. *See* 441 F.3d at 929. At trial, the government then presented penalty phase evidence relating to prior crimes and bad acts committed by the defendant, a category of evidence it had not listed in its notice of intent. *Id.* On appeal, the Eleventh Circuit held that the government satisfied its constitutional and statutory obligations by informing the defendant of what aggravating factors it intended to prove at trial, and further held that the government was not obligated to outline specific pieces of evidence it planned to use to support the aggravating factors. *Id.* at 930; *see also Battle*, 173 F.3d at 1347 (holding the government did not err in making last-minute changes to evidence listed in its notice of intent to seek the death penalty because the government is not required to provide specific evidence in the notice of intent).

Finally, in *Lee*, the district court granted post-trial relief to the defendant because, among other things, the court had permitted the government to elicit testimony from a defense mental health expert regarding unnoticed prior bad acts that the jury ultimately used to support a finding of future dangerousness. *See* 274 F.3d at 490–91, 495. The district court held this was unfair to Lee because he had no advance

notice of the evidence. *See id.* at 495. The Eighth Circuit, however, reversed, holding that "although Lee had a right to advance notice of the aggravating factors the government sought to prove at sentencing, Lee had no right to advance notice of the specific evidence the government would use to provide those factors." *Id.* (citing *Gray*, 518 U.S. at 167–68).

Numerous federal courts, citing the above authorities, have held that the government is not legally required to preview or reveal the specific proof it will offer in support of aggravating factors. *See, e.g.*, *United States v. Burkhalter*, Case No. 18-cr-36, 2021 WL 3519281, *1 (W.D. Mo. Aug. 10, 2021) ("[T]he FDPA does not require the government to provide advance notice of facts and evidence it will use to establish aggravating factors. Rather, the purpose of a notice of intent to seek the death penalty is to provide the defendant with sufficient notice of aggravating factors to enable the defense to respond and prepare the defendant's case in rebuttal.")[1]; *United States v. George*, Case No. 17-cr-

---

1 *But see id.* at *10 (holding that the combined information set forth in both the indictment and notices of intent to seek the death penalty sufficiently provided counsel for both defendants "the theories and facts that the government will use to establish each defendant's aggravating factors, with the exception of victim impact evidence").

201, 2020 WL 2812864, *3–*4 (E.D. La. May 29, 2020) (holding "the notices of intent against the capital defendants comply with statutory and constitutional requirements, which do not obligate advance notice of the government's penalty phase evidence"); *United States v. Candelario-Santana*, 368 F. Supp. 3d 316, 325 (D.P.R. 2019) ("The FDPA requires the United States to provide notice of its intent to seek the death penalty but not its evidence in support of the factors requested."); *United States v. Briseno*, Case No. 11-cr-77, 2014 WL 12682281, *2–*3 (N.D. Ind. Nov. 14, 2014) (holding that neither the Constitution nor the FDPA required the government "to preview its evidentiary support for the aggravating factors it has disclosed"); *United States v. Montgomery*, 10 F. Supp. 3d 801, 822 (W.D. Tenn. 2014) (denying motion for informational outline of statutory aggravating factors and stating "Supreme Court precedent does not compel a court to order the prosecutor to disclose his evidence") (internal quotation omitted); *United States v. Mayhew*, 380 F. Supp. 2d 936, 947 (S.D. Ohio 2005) (holding the government's argument that "it is not required to give notice of the specific evidence it will present in support of aggravating factors" was "well-taken"); *United States v. Cisneros*, 363 F. Supp. 2d 827, 837 (E.D. Va. 2005) ("The Government is

not required to spell out the evidence it intends to use during sentencing."); *United States v. Minerd*, 176 F. Supp. 2d 424, 448–49 (W.D. Pa. 2001) (holding notice of intent fully complied with the statutory scheme "in that it identifies the aggravating factors the government intends to prove if the defendant is convicted and the case enters the penalty phase.").

In the instant case, the Government has satisfied its constitutional and statutory obligations by informing Simmons through the NOI which aggravating factors it intends to prove at trial. [Doc. #20]. The law requires nothing more, particularly when, as here, the information in the indictment, NOI, and discovery combine to provide Simmons with a full picture of the Government's theory of the case and likely penalty phase evidence. Accordingly, this Court should deny Simmons' request for an informational outline.

B. Additional Notice Is Unnecessary in this Case

Simmons describes his request of this Court somewhat modestly. "Mr. Simmons does not seek the government's evidence or its theory of the case, but only a summary, factor by factor, of the theories and the essential facts on which the government intends to rely, enough to allow

the defense to prepare." [Def. Mot., Doc. #71, p. 8]. Although, as previously discussed, neither the Constitution nor the FDPA require it, some district courts have granted motions to provide informational outlines in some cases as necessary to permit the defense to prepare. *Id.*, *passim*. However, such motions should be denied when, as here, the defendant has sufficient notice and instead seeks the government's legal theories and evidentiary details.[2] With the special findings in the indictment, the NOI, expansive discovery, and now, this response, the Government has provided Simmons ample opportunity to prepare for trial and sentencing, and Simmons is not entitled an evidentiary preview.

*1. Grave Risk of Death to Additional Persons*

The grave risk of death created by Simmons' actions are self-evident in this case. First, he disarmed a guard and discharged a firearm

---

[2] *See, e.g.*, *United States v. Solomon*, Case No. 05-cr-385, 2007 WL 9702871, *1–2 (W.D. Pa. Jun. 26, 2007) (reiterating that the indictment and NOI "sufficiently advise Defendant of the charges against which he must be prepared to defend at trial" and holding that "[i]t is apparent to the Court that Defendant is not seeking better 'notice,' but rather is seeking the discovery of evidence and the government's legal and evidentiary theories, to which he is not entitled at this time"); *United States v. Gooch*, Case No. 04-cr-128, 2006 WL 3780781, *21 (D.D.C. Dec. 20, 2006) (finding the government was not required to outline the factual basis underlying the mental states alleged in the NOI, concluding that the defendant was "not really asking for the underlying *factual* basis for each gateway factor—he already has all the facts—but, instead, for *how* the government plans to use the evidence it has amassed" and that "[t]he government has no obligation to give him a preview of its evidentiary presentation") (emphasis in original).

in a small examination room in a private medical facility occupied by multiple other staff and patients. The Government has provided in discovery written and recorded interviews of every person in that office when Simmons killed Officer Flattes.

Simmons then attempted two carjackings and succeeded at a third — all while armed with Officer Feinauer's stolen service weapon. The Government provided in discovery written and recorded interviews of all three affected victims and provided video surveillance of all three carjackings.

Simmons then engaged in a lengthy, high-speed, multi-county vehicle chase in the car that he stole. The Government provided multiple videos of the chase from several different patrol vehicles that documented his shocking disregard for the safety of other motorists and the officers pursuing him.

The Court should deny Simmons' request regarding this factor because he has been sufficiently apprised of the evidence the Government intends to present. There is little risk that Simmons will be surprised by the Government's evidence regarding this statutory aggravating factor.

*2. Victim Impact*

The FDPA explicitly authorizes the government to offer victim impact evidence during the sentencing phase of a capital trial. *See* 18 U.S.C. § 3593(a). Further, in establishing the admissibility of victim impact testimony in capital cases, the Supreme Court held that "evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). For the jury to meaningfully assess the defendant's moral culpability and blameworthiness, it should have before it, at the sentencing phase, evidence of the specific harm caused by the defendant. *Id.* Victim impact evidence is simply another form or method of informing the jury about the specific harm caused by the crime in question. *Id.* Moreover, victim impact evidence is designed to reveal the victim's "uniqueness as an individual human being," *id.* at 823, "whose death represents a unique loss to society and in particular to his family." *Id.* at 825.

Because victim impact evidence is relevant to the decision of whether to impose the death penalty, there is no reason to treat such evidence differently than other relevant evidence. *Id.* at 827. Victim

impact evidence is subject to exclusion under a defendant's right to due process only when it is so unduly prejudicial that its admission would render the defendant's trial fundamentally unfair. *Id.* at 825; *United States v. Whitten*, 610 F.3d 168, 188 (2d Cir. 2010); *United States v. McVeigh*, 153 F.3d 1166, 1217 (10th Cir. 1998).

An informational outline regarding victim impact is unnecessary in this single-victim case because the harm caused is predictable and requires little pre-trial preparation to address. Simmons relies on cases like *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304 (S.D.N.Y. 2001), and *McVeigh*, 944 F. Supp. at 1491, to claim that victim impact evidence can be "vast" and "problematical." [Def. Mot., Doc. #71, pp. 15–16]. Yet those were massive, multi-victim cases. The *Bin Laden* case, related to the bombings of American embassies in Kenya and Tanzania that killed 224 people, involved an "extraordinary number of victims . . . (most all located abroad)." *Bin Laden*, 126 F. Supp. 2d at 304. Timothy McVeigh's bombing of the Alfred P. Murrah Federal Building in Oklahoma City killed 169 and injured many more. *McVeigh*, 944 F. Supp. at 1491. Some of the other cases upon which Simmons relies also present especially

complex, or difficult to predict, victim impact evidence.[3] Others cite *Bin Laden* and *McVeigh* in support of providing a victim impact informational outline without analyzing the unique differences those cases presented.[4] And while some district courts have granted such motions, they do not do so universally — not even in all complex victim cases. For example, the court denied requests for informational outlines (that included requests for victim impact summaries) in *United States v. Tsarnaev*, Case No. 13-cr-10200, Doc. #384 (D. Mass. Jun. 23, 2014) (the Boston Marathon bombing that killed three and injured hundreds of others), and *United States v. Bowers*, Case No. 18-cr-292, Doc. #205 (W.D. Pa. Feb 25, 2020) (the Pittsburg "Tree of Life" synagogue shooting that killed eleven people and wounded six others). And this Court denied a similar request in *United States v. Umana*, 2009 WL 10681708 (W.D.N.C. May 13, 2009).

---

[3] *See, e.g., U.S. v. Green*, 2008 WL 4000870 (W.D. Ky. Aug. 26, 2008) (rape and multiple murders of a family in Iraq); *U.S. v. Gendron*, 2024 WL 3647779 (W.D.N.Y. Aug. 2, 2024) (10 people killed and 3 injured); *U.S. v. Savage*, 2013 WL 1934531 (E.D. Pa. May 10, 2013) (6 murders in a multi-defendant RICO conspiracy case).

[4] *See, e.g., U.S. v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. Apr. 14, 2000); *U.S. v. Pleau*, 2013 WL 1673109, at *4 (D.R.I. Apr. 17, 2013) (ordering a victim impact outline after the government already agreed to produce one); *U.S. v. Llera Plaza*, 179 F. Supp. 2d 464, 474–75 (E.D. Pa. Dec. 21, 2001) (citing *Bin Laden* and *Cooper*); *U.S. v. O'Reilly*, 2007 WL 4591856, at *5 (E.D. Mich. Dec. 28, 2007); *U.S. v. Williams*, 2013 WL 1335599, at *40 (M.D. Pa. Mar. 29, 2013) (citing *Bin Laden* and *Cooper*).

The defense does not need additional information to prepare for victim impact evidence in this case. It is a single-victim case, and the victim's family lives locally. The Government provided a written and recorded interview of the victim's widow (who also worked at the Cherokee County Detention Facility) in discovery. The victim's family has declined to be interviewed by members of the defense team (as is their right, with or without an informational outline). One or more members of the family will testify about the loss of their loved one and the type of man he was to present his "uniqueness as an individual human being" (again, as is their right). *Payne*, 501 U.S. at 823; 18 U.S.C. § 3593(a). Such evidence is readily predictable and not particularly susceptible to impeachment. An informational outline regarding victim impact testimony, therefore, would not promote preparedness, but rather is intended only to require the Government to reveal its evidence and theory of the case. Simmons will not be surprised at trial by the nature of this evidence.

Furthermore, the victim's family has certain rights that the Court must protect. The Crime Victims' Rights Act affords them the right to be reasonably heard at sentencing and the right to be treated with fairness

and with respect for the victims' dignity and privacy. 18 U.S.C. § 3771(a). The sentencing phase of a capital case is a hearing at which the victims have a right to be heard. And requiring an informational outline regarding victim impact could, depending on its scope, intrude upon the victims' dignity and privacy. The Court should protect the victims from this unnecessary intrusion into their lives as they grieve their loss.

The Court therefore should deny Simmons' request for a detailed, pretrial accounting of the family's love and respect for Francisco Flattes. But if the Court instead chooses to require some form of outline of victim impact evidence, the Government requests that the Court set a deadline for compliance that is close to the trial date in March 2028. We request delayed notice for several reasons. First, victim impact is dynamic and ongoing. Notice of harm suffered by Francisco's family today will not account for the harm they will continue to suffer in the coming months leading up to trial. Second, the Government does not know currently whom they intend to call to offer this evidence. This decision likely will not be made until close to the trial term and will rely on factors that are difficult to predict today, such as a witness's mental fitness and fortitude to offer such emotionally difficult testimony. Third, gathering these

details will be intrusive and emotionally painful. Decency requires permitting the family more time to recover from harm Simmons inflicted upon them before asking them to provide such details for Simmons' benefit.

*3. Future Dangerousness*

The NOI already provides Simmons with ample notice regarding the future dangerousness non-statutory aggravating factor. It refers to Simmons' extensive criminal history and breaks it down into four sub-categories of emphasis: his multiple prior escapes and escape attempts, his multiple prior incidents of dangerous flight from law enforcement officers (often preceded by carjacking or car theft), his continuing pattern of violence, and his low rehabilitative potential. [Doc. #20]. Simmons is undoubtedly familiar with his own criminal history; if not, the Government has provided him with copies of his conviction history in discovery, including charging documents, judgments, and, when available, underlying discovery documents.

Simmons' entire criminal history is relevant and admissible during the sentencing phase, just as it would be in any other non-capital sentencing hearing. *See, e.g., Tuilaepa v. California*, 512 U.S. 967, 976–

77 (1994) (approving a capital jury's consideration of a defendant's "prior criminal activity"); *Zant v. Stephens*, 462 U.S. 862, 887–88 (1983) (approving the use of a defendant's entire criminal history in a capital sentencing hearing); *Jurek v. Texas*, 428 U.S. 262, 272–73 (1976) (approving the use of a defendant's "significant criminal record" to determine whether the defendant poses a "continuing threat to society"); *United States v. Jordan*, 357 F. Supp. 2d 889, 897 (E.D. Va. 2005) ("[A defendant's criminal record], whether it contains serious or minor offenses, conveys information to the jury about his character and is therefore relevant to the [capital] selection process."). All Simmons' prior convictions are relevant and admissible, so therefore it is unnecessary for the Government to identify particular crimes when it has disclosed Simmons' entire criminal history in discovery.

The NOI goes beyond what is required by identifying categories of crimes from Simmons' history that best illustrate his future dangerousness. Simmons has escaped or attempted to escape from police custody many times, demonstrating that imprisonment may not eliminate the danger he poses to society. Simmons has repeatedly stolen or carjacked vehicles and then led police on dangerous, high-speed chases

that endangered countless lives. In addition to the specific convictions that support the statutory aggravating factor of a prior felony involving a firearm [Doc. #20, pp. 3–4], many of Simmons' prior convictions also are crimes of violence. And Simmons' recidivism — often shortly after release or escape from custody — demonstrates that the legal system has been unable to rehabilitate him, despite many attempts. The Court therefore should deny Simmons' request to order the Government to reveal its evidence and trial strategy. It is unlikely that Simmons will be surprised by the Government's presentation of evidence related to his significant prior criminal history.

*4. Uncharged Acts of Violence and Contemporaneous Convictions*

The NOI advises Simmons that the Government intends to identify as aggravating factors other violent, contemporaneous conduct he committed during his escape and flight from law enforcement. [Doc. #20, p. 7]. This non-statutory aggravating factor refers to his conduct on June 30, 2025, some of which resulted in other, non-capital counts in the Bill of Indictment, [Doc. #1, Counts Three through Eight], and some of which was uncharged. Though not generating their own capital offenses, these

violent acts are aggravating factors that the jury should consider regarding the imposition of the death penalty in Counts One and Two.

These acts are well-documented in discovery and, for most, in the Bill of Indictment. He violently assaulted Officer Feinauer and disarmed him. He attempted to carjack the detention officers, then attempted to carjack a civilian patient of the clinic by menacing her with Feinauer's gun. Simmons then carjacked another patient by pointing his stolen firearm at her and another female bystander. During the vehicle chase that followed, Simmons pointed a gun at a state trooper and assaulted both officers and civilians with his stolen vehicle. After officers disabled the car, Simmons continued to assault and threaten officers by claiming he had a gun and an explosive device. Most of these actions were recorded on video that the Government provided to the defense, and Simmons admitted to most, if not all, of these actions in his interview with the SBI.

Simmons does not require a summary from the Government to prepare for trial. These acts are well-documented in discovery and should offer no surprise to him when introduced at trial. All the events of June 30 are admissible and may be considered by the jury as

aggravating factors. The Court should deny Simmons' request for additional information from the Government because it is unnecessary and not required by law.

*5. Intent to Commit Additional Murders*

Simmons does not require supplemental notice regarding his intent to commit additional murders because the Government's information about that non-statutory aggravating factor came directly from Simmons. Following his recapture on June 30, 2025, Simmons provided a lengthy interview to SBI agents. The interview was video recorded and provided in discovery. Simmons told the agents that his daughter was molested by "this guy" when she was seven years old. Simmons then explained, "If I woulda got away today, I swear to God if I'd have got away today, tomorrow he would have been dead. 'Cause that where I was going, to Concord, to kill him. He was going to be dead. I was going in his house, kick his momma's door in, I was gonna kill his momma, his daddy, and him. That's what I was gonna do. That's my word to God. That's what I was gonna do." Simmons followed with additional comments affirming this intent. Simmons clearly knows about this

aggravating factor and will not be surprised when the Government introduces his statements into evidence. No additional notice is required.

## Conclusion

The Court should deny Simmons' motion. The Government already had complied with what is required by law, and Simmons is not legally entitled to a preview of the Government's case. The Bill of Indictment, the NOI, and expansive discovery provided by the Government are more than adequate to permit Simmons to prepare his defense. Accordingly, the Government respectfully requests that the Court deny the motion.

RESPECTFULLY SUBMITTED, this the 17th day of September, 2026.


RUSS FERGUSON
UNITED STATES ATTORNEY

/s/ Don Gast
______________________________

DON GAST
ASSISTANT UNITED STATES ATTORNEY
N.C. Bar Number: 23801
100 Otis Street, Suite 233
Asheville, NC 28801
Telephone: (828) 271-4661
Facsimile: (828) 271-4670
Don.Gast@usdoj.gov

/s/ David A. Thorneloe
______________________________

DAVID A. THORNELOE
ASSISTANT UNITED STATES ATTORNEY
N.C. Bar Number: 54463
100 Otis Street, Suite 233
Asheville, NC 28801
Telephone: (828) 271-4661
Facsimile: (828) 271-4670
David.Thorneloe@usdoj.gov